## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____

Julia Wesley,                                               :

          Plaintiff,                        :        Hon. Joseph H. Rodriguez

          v.                                      :        Civil Action No. 12-131

Palace Rehabilitation & Care Center,
L.L.C.; Ana Carian,                              :        **Opinion**

          Defendants.                    :
_____

      This matter is before the Court on Defendants' Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56. [Docket No. 33.] The motion seeks summary judgment on Plaintiff's claims for discrimination under 42 U.S.C. § 1981 and the New Jersey Law Against Discrimination, N.J.S.A. § 10:5-12 ("NJLAD") Plaintiff claims that she was terminated from her employment with Defendants on the basis of her race and her national origin. Defendants claim that Plaintiff was a subpar employee and that she abandoned her employment.  The Court heard oral argument on the motion on October 29, 2013.  In addition, Plaintiff moves for permission to file a sur-reply brief. [Docket No. 38]. For the reasons stated on the record during the hearing on the motions, and the reasons set forth below, Plaintiff's Motion for permission to file a sur-reply brief is granted and Defendants' motion for Summary Judgment is granted in part and denied in part.

## I.    <u>Factual and Procedural Background</u>

      Julia Wesley (herein: "Plaintiff") emigrated from Liberia to America in 1997 and speaks with a thick Liberian accent. (<u>Wesley Dep.</u>, 12:8.)  Plaintiff received her degree as

a Licensed Practical Nurse from Sarah Health Academy in May of 2009.  (Id. at 22:24-23:3.) Her sister, Mama Zabay, who was also born in Liberia and speaks with an accent, is employed at The Palace Rehabilitation and Care Center, L.L.C. ("Palace"), and encouraged Plaintiff to apply for employment with Palace. (Wesley Dep., 24:14-24, 25:3-4.) On or about August 22, 2011, Plaintiff completed an application for employment with Palace, and shortly thereafter interviewed with Ana Carian, Director of Nursing (collectively: "Defendants"). (Wesley Dep., 30:5-25).   Ms. Carian is Asian.

Plaintiff's orientation with Palace on August 24, 2011 began her 90 day probationary employment term. (Wesley Dep., 54:22-24.) Plaintiff was assigned to work the 11:00 p.m. to 7:00 a.m. shift at Palace on September 8, 2011. (Id. at 59:17-23.) Plaintiff's shift assignment was located in the "C Wing" of Palace and included caring for 50 patients, 19 to 22 of which were of Asian descent. (Id. at 67:9-14, 66:23-67:7.) Palace utilized an on site translator during the 7:00 a.m. to 11:00 p.m. shift, but no translator was on site during Plaintiff's 11:00 p.m. to 7:00 a.m. shift. (Id. at 71:21-72:8.) Plaintiff testifies that despite not having a translator on site during her shift, none of the residents ever complained to her that they could not understand her speech. (Id. at 111:12-18, 114:9-11.)

Defendant claims that Plaintiff's job performance was inadequate because she was often tardy and was inattentive to the needs of the patients.  In fact, Plaintiff was tardy to her August 25, 2011 classroom training. (Wesley Dep., 56:24-25, 57:1-9.) Defendants accuse Plaintiff of being tardy six times in September, six times in October, and eight times in November. (Def. Reply Brief, 1-2.)  Defendants also allege that Plaintiff had difficulty completing required documentation.  (Wesley Dep., 70:25; 71:1-

2.) Plaintiff was responsible for completing a 24 hour report at the end of her shift and she admits that she often failed to complete the report. (Id.) Additionally, Plaintiff admits that she struggled to properly document the administration of narcotics. (Romero Decl., Exhibit L; Wesley Dep., 73-75.)

Towards the end of Plaintiff's probationary period, Ms. Jackson, Assistant Director of Nursing, and Ms. Carian met to discuss Plaintiff's future with Palace. (Jackson Dep., 10:1-10; Carian Dep., 42:20-24, 43.) Ms. Jackson testifies that although she recommended Plaintiff's termination, Ms. Carian suggested that they extend Plaintiff's probationary period. (Carian Dep., 39:22-24, 40:1-3; Jackson Dep., 27:15-22.) Ms. Jackson followed this suggestion, and met with Plaintiff on November 15, 2011 and extended her probationary period. (Wesley Dep., 67:3-7, 68:10-17.)  During this meeting, Ms. Jackson also "counseled" Plaintiff on her tardiness. (Wesley Dep., 67:9-13, 69:10-13.)  However, Plaintiff's tardiness continued during the extended probation, as Plaintiff was late six times in December. (Wesley Dep., 81:16-25. 82:1-23.)

On December 16, 2011, Plaintiff met with Ms. Jackson.  The parties dispute the nature of this meeting.  Plaintiff claims that she was told that she would no longer be working the 11:00 p.m. to 7:00 a.m. shift and was terminated. (Wesley Dep., 84:1-2, 10.) Defendants claim that Plaintiff was removed from this shift because of her perpetual tardiness; Defendants hoped that a shift change would result in a reduction of Plaintiff's tardiness.  (Carian Dep., 55:17-22, Jackson Dep., 43:24, 44:1-5, 46:17-19.) Ms. Carian testifies that, despite being offered another shift, Plaintiff never contacted the staffing coordinator to choose another shift. (Carian Dep., 56:4-24.) Plaintiff, however, alleges that at the December 16 meeting Ms. Jackson told her she was terminated and that

3

Palace intended to replace her with an Asian employee.  Ms. Carian further explained that the residents would more easily understand and relate to an employee of Asian descent. (Wesley Dep., 88:25-89:4.)

Plaintiff was replaced by two nurses of Asian descent. (Id. at 92:10-93:12, 66:9-19.) Defendants allege that Plaintiff was never terminated; rather, she simply stopped reporting to work.[1] Plaintiff filed the Complaint on January 9, 2012. [Docket No. 1.] After discovery and motion practice, Defendants filed the present motion. [Docket No. 33.]

## II.    Jurisdiction

The Court has jurisdiction over Plaintiff's 42 U.S.C. § 1981 claim pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over the New Jersey Law Against Discrimination claim under 28 U.S.C. § 1367.

## III.    Standards of Review

### A. Summary Judgment Standard

A motion for summary judgment will be granted if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law.  Pearson v. Component Tech. Corp., 247 F.3d 471, 482 n.1 (3d Cir. 2001) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)); accord Fed. R. Civ. P. 56 (c).  Thus, this Court will

---

[1] There is a dispute of fact related to whether Ms. Wesley was officially terminated.  Both parties offer different versions of the events that took place during a December 16, 2011 meeting, during which Plaintiff claims she was terminated.  Defendants claim that Ms. Wesley was not terminated. (Carian Dep., 57:11-17; Jackson Dep. 11:2-10, 30:10-19).  They claim that Plaintiff simply stopped reporting to work and never contacted scheduling to secure a different shift.  In general terms, Defendants claim that Plaintiff abandoned her employment. Plaintiff claims she was fired.

enter summary judgment only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56 (c).

An issue is "genuine" if supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit.  Id.  In determining whether a genuine issue of material fact exists, the court must view the facts and all reasonable inferences drawn from those facts in the light most favorable to the nonmoving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact.  Celotex Corp., 477 U.S. at 323.  Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial.  Id.; Maidenbaum v. Bally's Park Place, Inc., 870 F. Supp. 1254, 1258 (D.N.J. 1994).  Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party.  Anderson, 477 U.S. at 256-57.

In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial.  Anderson, 477 U.S. at 249.  Credibility

determinations are the province of the finder of fact.  <u>Big Apple BMW, Inc. v. BMW of</u> <u>N. Am., Inc.</u>, 974 F.2d 1358, 1363 (3d Cir. 1992).

## B.  28 U.S.C. § 1981 and NJLAD

### 1.  28 U.S.C. § 1981 Generally

Congress passed 42 U.S.C § 1981 as part of the Civil Rights Act of 1866 to enforce the rights guaranteed by the Thirteenth and Fourteenth Amendments. <u>See</u> <u>St. Francis</u> <u>College v. Al-Khazraji</u>, 481 U.S. 604, 612 (1987). Section 1981 provides, in part, that every citizen has the same right to make and enforce contracts as white citizens.[2]  The right to contract protected by the statute includes protection from discrimination in employment contracts. <u>See</u> <u>Walker v. Abbot Lab.</u>, 340 F.3d 471, 476 (7th Cir. 2003); <u>Estate of Oliva v. New Jersey</u>, 579 F.Supp.2d 643 (D.N.J. 2008). While the statute itself does not include the word "race" the Supreme Court construes the section to forbid all "racial discrimination" in the making of private and public contracts. <u>St. Francis College</u>, 481 U.S. at 609. In <u>Saint Francis College</u>, the Supreme Court found that at the time § 1981 was passed, the concept of "race" had a different and more expansive meaning than it does today. <u>Id.</u> Therefore, the statute's reach is wider than the contemporary concept of "race" suggests. <u>Id.</u>  Based upon this premise, the Supreme Court has recognized that the statute prohibits discrimination on the basis of "race, ancestry, and ethnic characteristics." <u>Id.</u> at 613.

### 2.  Scope of "Racial Discrimination" under 28 U.S.C. § 1981

---

[2] The statute states: "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts...as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses and exactions of every kind, and to no other." 42 U.S.C. § 1981.

While the definition of "racial discrimination" explained by the Court in <u>St. Francis College</u> is expansive, there are limits to the types of discrimination that qualify for redress pursuant to § 1981. The majority opinion in <u>St. Francis College</u> fails to resolve the question of whether or not national origin discrimination comes within the scope of § 1981. The concurrence in <u>St. Francis College</u> champions liberal application of § 1981 and construes the majority's opinion as including all types of discrimination except that based on "birthplace alone." <u>See</u> <u>St. Francis College</u>, 481 U.S. at 614 (Brennan, J. concurring.).  The concurrence posits that "national origin discrimination" should be protected because the distinction between "national origin" and the § 1981 standard of "race, ancestry, and ethnic characteristics," is often esoteric. The country where someone is born (her national origin) is, as a practical matter, often the same place as where her ancestors are from (her race, ancestry, or ethnic characteristics). <u>Id.</u>  Indeed, cases brought under Title VII of the Civil Rights Act, in comparison, consider claims for national origin and ancestry as the same. <u>Id.</u> (citing <u>Espinoza v. Farah Mfg. Co.</u>, 414 U.S. 86, 89 (1973)).

In this regard, the <u>St. Francis College</u> concurrence attempts to maintain consistency with jurisprudence in other areas of the law and, as a result, reads the majority opinion as excluding "only discrimination based on birthplace alone" from the protections of  § 1981. <u>Id.</u> at 614.  Thus, the concurrence carves out the question unanswered by the majority; whether § 1981 allows for suits falling into the wider definition of "national origin discrimination."  As a result, the question remains unanswered by the Supreme Court.

Multiple circuits have ruled that a national origin discrimination claim is not cognizable under § 1981.[3] Although the Third Circuit has yet to directly address the issue, see Funayama v. Nichia Am. Corp., No. 08-CV-5599, 2009 U.S. Dist. LEXIS 43765, at *12-13 (E.D.Pa. May 20, 2009), the court has noted in dicta that "a claim based solely on national origin would be an insufficient basis for § 1981 claim under Al–Khazraji." See Bennun v. Rutgers State Univ., 941 F.2d 154, 172 (3d Cir. 1991). Moreover, a majority of courts in the Third Circuit have held that § 1981 does not apply to claims based on national origin discrimination. Funayama , No. 08-CV-5599, 2009 U.S. Dist. LEXIS 43765, at *12-13 (collecting cases); see also Bahar v. Northwestern Human Servs., No. 06-CV-3910, 2007 U.S. Dist. LEXIS 6372, at *16–18 (E.D.Pa. Jan. 29, 2007) (same); Chandoke v. Anheuser–Busch, Inc., 843 F.Supp. 16, 19 (D.N.J. 1994) (discussed below); Ohemeng v. Delaware State Coll., 676 F.Supp. 65, 68–69 (D.Del. 1988).

Considering the limitations of § 1981, whether Plaintiff can prevail on her federal claims depends on whether the alleged adverse employment action was motivated by discrimination based on "race, ancestry, and ethnic characteristics" or "national origin."

### 3.   Discrimination based on an individual's accent under 28 U.S.C. § 1981

[3] See El-Zabet v. Nissan North America, Inc., 211 Fed. App'x 460, 463 (6th Cir. 2006) ("...it is legally impossible to state a claim for national-origin discrimination under section 1981..."); Daemi v. Church's Fried Chicken, Inc., 931 F.2d 1379, 1391 n.7 (10th Cir. 1991) ("However, actually §1981 does not outlaw national origin discrimination per se, only discrimination on the basis of race."); Fonseca v. Sysco Food Serv., 374 F.3d 840, 850 (9th Cir. 2004) (finding "national origin discrimination is not within the ambit of §1981," allowing claim of racial discrimination based on plaintiff being "Hispanic" rather than national origin discrimination based on plaintiff being "Guatemalan."); Togerson v. City of Rochester, 643 F.3d 1031, 1053 (8th Cir. 2011) ("Section 1981 does not authorize discrimination based on national origin."); but see Ptasznik v. St. Joseph Hosp., 464 F.3d 691, 699 n.4 (7th Cir. 2006) (finding "national origin discrimination" is equal to "ancestry or ethnic characteristics" and thus protected by § 1981).

Discrimination based upon a person's accent may constitute national origin discrimination and/or racial discrimination.  To determine the nature of the discriminatory animus when a plaintiff's accent is at issue, a court must consider the context of the employment action or comments.  See Chandoke, 843 F.Supp at 20, n. 6 (D.N.J. 1994).  In Chandoke, the plaintiff, an Indian immigrant whose job application was rejected, alleged that the defendant committed both racial and national origin discrimination. Id. at 17.  The plaintiff in Chandoke argued that the defendant knew he was Indian as soon as they spoke on the phone, because he spoke with a thick, distinctly Indian accent. Id. at 19.  The defendant argued that evidence of an accent only supports discrimination based on national origin, and not discrimination based on race. Id. Applying the reasoning in Chandoke, it is necessary to look at the circumstances surrounding Ms. Jackson's statements in order to determine if the case presents national origin and/or racial discrimination. Id. at 19.  National origin discrimination may arise in a case where a plaintiff suffered from employees mocking her accent, while also being taunted with phrases that specifically acknowledge a person's national origin.[4] Id. at 20. Under a different set of circumstances, a plaintiff's accent could give rise to racial discrimination.[5]  Thus, the context of Ms. Jackson's alleged statements regarding Plaintiff's accent is key to determining the type of discriminatory animus.

---

[4] Chandoke provides the example of phrases that directly relate to national origin such as: "[s]tupid Foreigner, you come over here and take over the country," "[s]tinky foreigner," and "[g]o back where you came from." Id. at 20.

[5] The court in Chandoke provides the hypothetical example of a Jamaican man with a distinct think Jamaican accent, interviewing for a job on the phone. Recognizing that the accent indicated the applicant was from Jamaica, and knowing that most Jamaicans are black, would support an argument that the employer using the accent in order to discriminate based on race. Chandoke, 843 F. Supp. at 20, n. 6.

### 4. NJLAD

The NJLAD prohibits discrimination "because of race, creed, color, national origin, ancestry, age, sex, gender identity or expression, affectional or sexual orientation, marital status, familial status, liability for service in the Armed Forces of the United States, disability or nationality." N.J.S.A. § 10:5−3 (emphasis added);  N.J.S.A. § 10:5-12(a).  Courts employ the Title VII evidentiary framework and standard of review when analyzing claims under the NJLAD.  Iadimarco v. Runyon, 190 F.3d 151, 164 (3d Cir. 1999).

### C. **Discrimination Standards of Review**

Claims brought under § 1981 and the NJLAD are analyzed using the same evidentiary schemes. See Grigoletti v. Ortho Pharm. Corp., 570 A.2d. 903, 906-907 (N.J. 1990) (Federal law dictates NJLAD analysis); Stewart v. Rutgers, 120 F.3d 426, 432(3d Cir. 1997) (Applying McDonnell Douglas analysis to § 1981 claims.) A plaintiff has the opportunity to prove discrimination by "(1) presenting direct evidence of discrimination that meets the requirements of Justice O'Connor's controlling opinion in Price Waterhouse, or (2) presenting indirect evidence of discrimination that satisfies the familiar three-step framework of McDonnell Douglas Corp. v. Green." See Fakete v. Aetna Inc., 308 F.3d 335, 337 (3d Cir. 2002).  Plaintiff in the instant case argues that she can meet her burden under either analysis.

#### 1. Direct Evidence of Discrimination

Direct evidence of discrimination is evidence that allows a jury to find that the decision makers placed substantial reliance on a plaintiff's inclusion in a protected class in reaching their decision. Glanzman v. Metro. Mgmt. Corp, 391 F.3d 506, (3d Cir.

2004).  Direct evidence leads to a logical inference of bias, as well as to the fact that the person was motivated by the bias when making an employment decision. Fakete, 308 F.3d at 338.  There is not a precise definition of the type of evidence that qualifies as "direct," and even certain circumstantial evidence may be sufficient, as long as that evidence directly reflects the unlawful bias for an adverse decision. Id. at 339.  The Third Circuit has explained that a statement that reflects a discriminatory animus and was made by an individual involved in the decision making process is exactly the type of evidence to qualify as direct discrimination. Id. (quoting Hook v. Ernst and Young, 28 F.3d 366, 374 (3d Cir. 1994)).

Under the Price Waterhouse theory of direct discrimination, once Plaintiff shows that race was a "substantial" factor in motivating Palace's adverse employment action against her, the burden of persuasion on the issue of causation shifts to Palace. Id. at 338. To overcome this burden, Palace employer must prove that it would have terminated Plaintiff even if he had not considered her race. Id. (citing Price Waterhouse v. Hopkins, 490 U.S. 228, 265-266 (1989)).

2.    Indirect Evidence of Discrimination

Plaintiff may also prove her claim with indirect evidence of discrimination under the "burden shifting" framework provided by the Supreme Court in McDonnell Douglas v. Green, 411 U.S. 792, 802 (1973).  Under the McDonnell Douglas framework, a plaintiff with only indirect evidence must first prove a "prima facie case" to raise an inference of discrimination. Id. at 803.  After a plaintiff establishes a prima facie case, the burden of production shifts to the defendant to produce a "legitimate, nondiscriminatory reason" for the employment decision. See Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248,

11

254 (1981). If this burden is met, a plaintiff has the burden of proving by a preponderance of the evidence that the reason provided by the defendant is pretext. Id. at 260.

a. Prima Facie Case

Although the analysis of Plaintiff's claims under the NJLAD and § 1981 is the same and overlaps, the elements of a *prima facie* case of discrimination under the NJLAD and §1981 differs. Typically, a *prima facie* case of unlawful discrimination in the workplace under the NJLAD is established when a plaintiff demonstrates by a preponderance of the evidence that he or she (1) belongs to a protected class; (2) was performing a job at a level that met the employer's legitimate expectations; (3) suffered an adverse employment action; and (4) others not within the protected class did not suffer similar adverse employment actions. Zive v. Stanley Roberts, Inc., 867 A.2d 1133 (N.J. 2005).

The existence of a prima facie case of race-based employment discrimination "is a question of law that must be decided by the Court." Sarullo v. United States Postal Service, 352 F.3d 789, 797 (3d Cir.2003). Under McDonnell Douglas, a plaintiff can prove a *prima facie* case by showing that she is a member of a protected class[6], was qualified for the position, suffered an adverse employment action, and that the action was motivated because of the plaintiff's status in the protected class. Id.

A plaintiff's qualification for the position she held is judged by objective standards. See Red v. Potter, 211 Fed. App'x. 82, 83 (3d Cir. 2006) (citing Sempier v. Johnson & Higgins, 45 F.3d 724, 729 (3d Cir. 1995)), cert denied, 515 U.S. 1159, 115 S.Ct. 2611, 132

---

[6] Plaintiff's status in a protected class is not contested.

L.Ed.2d 854 (1995). Courts should consider a plaintiff's objective experience and education without considering the subjective expectations of the employer. See id. Subjective qualities desired by the employer are better analyzed during the pretext analysis of a plaintiff's case. See Weldon v. Kraft Inc., 896 F.2d 793, 797 (3d Cir. 1990). The New Jersey Supreme Court has held that a qualified plaintiff is only required to show that she is "actually performing the job." See Zive v. Stanley Roberts, 867 A.2d 113, 120 (N.J. 2005).  Like the Third Circuit, the New Jersey Supreme Court has also held that the subjective standards of the employer are more relevant to the legitimate business reason and pretext portions of the argument. See Viscik v. Fowler Equipment Co., 800 A.2d 826, 837 (N.J. 2002).

After demonstrating that she is qualified for the job, a plaintiff must show she suffered an adverse employment action. See McDonnell Douglas, 411 U.S. at 803.  An employment action is tangible when it "constitutes a significant change in employment status, such as hiring, firing failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Burlington Indus. Inc. v. Ellerth, 524 U.S. 742, 761 (1998).  An employment action is considered adverse when it alters an employee's "compensation, terms, conditions, or privileges of employment."  See Robinson v. City of Pittsburgh, 120 F.3d 1286, 1300 (3d Cir. 1997).

Lastly, a *prima facie* case must show a causal connection between Plaintiff's protected status and the adverse employment action through the use of direct or circumstantial evidence.  See Trujillo-Cummings v. Public Serv. Co., 173 F.3d 864 (10th Cir. 1999). Plaintiff can prove causation by pointing to the record as a whole for evidence that suggests causation.  See Farrell v. Planters Lifesavers Co., 206 F.3d 271,

281 (3d Cir. 2000).  Even demonstrating sufficient pretext for the proffered legitimate reason offered by an employer can establish causation. See Zelinksi v. Pa. State Police, 108 Fed. App'x. 700, 707 (3d Cir. 2004).

The causal link between protected class and an adverse employment action must be considered with a careful eye to the specific facts and circumstances of a particular case. See Farrell, 206 F.3d at 278 (3d Cir. 2000).  There is no exclusive method of establishing causation and the evidence as a whole may suffice to raise the inference. See Kachmar v. Sunguard Data Sys., 109 F.3d 173, 177 (3d Cir. 1997).

b. Legitimate Non-Discriminatory Reason and Pretext

To establish pretext, Plaintiff is not required to show that Defendants' decision was unwise or imprudent. See Fuentes v. Perskie, 32 F.2d 759, 763 (3d Cir. 1994). Evidence of pretext casts enough doubt on the legitimate business reasons provided by the defendant that a reasonable fact-finder could conclude that the true reason for the employment decision was discriminatory. Id.  This is accomplished by showing weaknesses, implausibility, inconsistencies, or contradictions in the defendant's evidence. Id.  At the summary judgment stage, the burden is relatively low. See Sempier, 45 F.3d at 729.  A plaintiff who has already established a *prima facie* case need only point to evidence that the defendant's proffered reason is a pretext for discrimination. Id.

# IV. Analysis

### A.  Scope of §1981 and NJLAD

Defendants argue that Plaintiff does not allege a cognizable claim under 42 U.S.C. § 1981 and the NJLAD because she has not alleged facts that support a claim for racial discrimination.  The gravamen of Defendants' argument is that Plaintiff's allegations establish, at best, potential discrimination based on national origin discrimination, which falls outside the scope of § 1981.  This Court finds, drawing all inferences in favor of the Plaintiff, that a reasonable fact finder could determine that the Plaintiff has sufficiently alleged racial discrimination. See Chandoke, 843 F. Supp. at 20.

Plaintiff testifies that during the December 16, 2011 meeting she was terminated so that Defendants could replace her with an Asian nurse who would "better relate" to the Asian patients. (Wesley Dep., 84:13-84-24.) Additionally, Plaintiff claims that Ms. Jackson told her that Palace needed a nurse that the residents could understand at night, since there is no translator on duty during the night shift. (Id. at 104:7-22.) Plaintiff demonstrates that the two women who replaced her are both of Asian decent. (Id. at 92:10-93:12, 66:9-19.)  The context of Defendants' alleged statements regarding Plaintiff's communications skills—that they told her they wanted a nurse of a different race and then replaced her with nurses from that race— permits an inference that the statements were motivated by racial, rather than national origin animus.  As a result, a reasonable fact finder could conclude that Plaintiff was terminated on the bases of her race and in favor of a member of a preferred race in violation of § 1981 and the NJLAD. For these reasons, summary judgment is denied as a matter of law on Plaintiff's claim for racial discrimination under § 1981 and the NJLAD.

Defendants are entitled to summary judgment as a matter of law on Plaintiff's claim of "national origin" discrimination under § 1981. If the jury concludes that Plaintiff's termination because of her accent was the result of "national origin" discrimination, rather than discrimination based on "race, ancestry, and ethnic characteristics," then Plaintiff is without redress under § 1981. The Supreme Court in St. Francis College held that § 1981 provides redress for discrimination based on "race, ancestry, or ethnic characteristics." See St. Francis College, 481 U.S. at 613.  Although the concurrence in St. Francis College suggests the majority's definition of racial discrimination may include "national origin" discrimination, because "national origin" and "ancestry" are synonymous, id. at 615, most courts have not adopted this reasoning. While the Third Circuit has not directly ruled on this issue, courts within the Third Circuit have held that national origin discrimination is not protected by § 1981. See, Funayama, at *12-13, supra. (collecting cases).  This Court rules similarly.  Summary judgment is granted as a matter of law on Plaintiff's claim of national origin discrimination under § 1981.

However, Plaintiff pleads a cognizable claim of national origin discrimination under the New Jersey Law Against Discrimination. National origin is a protected status under the NJLAD. See N.J.S.A. § 10:5-12 (a). Summary judgment is denied as a matter of law as to Plaintiff's claim of national origin discrimination under the NJLAD.

Having determined that Plaintiff's claims of racial discrimination under § 1981 and racial and national origin discrimination under the NJLAD are cognizable, the Court will analyze whether a genuine issue of material fact exists precluding summary judgment.

**B. Analysis of Direct Evidence of Discrimination**

There are genuine issues of material fact precluding summary on Plaintiff's claim of discrimination under <u>Price Waterhouse</u>.  Plaintiff testifies that she was told that her removal from her shift was accomplished so that Palace could hire someone of Asian descent, whom Palace believed the patients could better "relate" to and understand. (<u>Wesley Dep.</u>, 84:13-84-24, 104:7-22.)  As required by <u>Fakete</u>, these statements were allegedly made by an individual involved in the decision making process, precisely when the employment decision was explained to Plaintiff. <u>See</u> <u>Fakete</u>, 308 F.3d at 337. Viewing the facts and drawing all reasonable inferences in the light most favorable to Plaintiff, she has met her burden of demonstrating that the statement was made. <u>Matsushita Elec. Indus. Co.</u>, 475 U.S.at 587.

Defendants detail Plaintiff's documented, but not formally sanctioned by written warning, tardiness. Plaintiff admits to being tardy and agrees that she did not always complete required end- of-shift paperwork.  Finally, Plaintiff was still a probationary employee during the entire time of her employment with Palace.  Defendants meet their burden of demonstrating that the alleged employment action would have occurred despite Plaintiff's allegation of racial discrimination.

Although these reasons are compelling, the Court's function on summary judgment is not to weigh the evidence.  <u>Anderson</u>, 477 U.S. at 249.  Rather the statements concerning Defendants' preference of an Asian employee coupled with the fact that Defendants replaced Plaintiff with Asian nurses challenged Defendants' assertion that they would have acted in a similar manner despite the alleged discriminatory motivation.  Moreover, as discussed <u>supra.</u>, Plaintiff was never given a written warning

for her tardiness and she received "standard" marks on her employment evaluation. While Plaintiff's evidence is thin, it suffices to raise a genuine issue of material fact as to Defendants' true motivation. As a result there are genuine issues of material fact precluding summary judgment on this theory.

### B.  Indirect Evidence of Discrimination

1.  <u>Elements of the *Prima Facie* Case</u>

Plaintiff demonstrates a *prima facie* case of discrimination pursuant <u>McDonnell Douglas</u> under §1981 and the NJLAD.  A plaintiff's burden to show a *prima facie* case of indirect employment discrimination is not onerous. <u>See Sempier v. Higgins</u>, 45 F.3d 724, 728 (3d Cir. 1995). The evidence need not definitively prove that the employer acted for discriminatory reasons. <u>See Sorba v. Pennsylvania Drilling Co</u>., 821 F.2d 200, 205 (3d Cir. 1994). Instead, a properly established *prima facie* case simply raises an inference of discrimination. <u>Id.</u> The evidence produced by the plaintiff must simply lead the court to the conclusion that, if otherwise unexplained, the acts of the defendant were based on impermissible factors. <u>Id.</u>

Although Plaintiff is a member of a protected class, Defendants first argue that she cannot establish a *prima facie* case of discrimination because her tardiness and documentation issues rendered her unqualified for the position she held. There is sufficient evidence in the record that demonstrates that Plaintiff was a Licensed Practical Nurse and was objectively qualified for the position. (<u>See</u> <u>Wesley Dep.</u>, 22:24-23:3.)  Moreover, Defendants' argument does not address the qualifications necessary to determine the "otherwise qualified" element of the *prima facie* case.  <u>See Red</u>, 211 Fed. App'x. at 83.  Instead, Defendants focus exclusively on its subjective expectations; the

fact that Plaintiff was underperforming does not necessarily render her unqualified. The subjective criteria proffered by the Defendants, namely Plaintiff's perpetual tardiness and insufficient documentation, are properly reserved for the legitimate business reason and pretext analysis. See Weldon, 896 F.2d at 797. A reasonable jury, considering Plaintiff's objective qualifications, could find that she was qualified for the position she held.

Defendants next argue that Plaintiff did not suffer an adverse employment action because she was not terminated and because removing Plaintiff from Plaintiff's preferred shift is not an adverse action. Ms. Carian states that she told Ms. Wesley to contact Palace's scheduling coordinator to ask for a different shift assignment. (Carian Dep., 56:4-24.) Plaintiff testifies differently, alleging that Ms. Jackson told her she was terminated during the December 16 meeting. (Wesley Dep., 88:25-89:4.) Defendants argue that Plaintiff's position is only supported by self-serving testimony. But, a party's sworn testimony that reflects first-hand knowledge, even if self-serving, can create a genuine issue of material fact. Id.  The Court finds that there is genuine is of material fact as to whether Plaintiff was terminated.  A determination of whether Plaintiff was terminated falls on a credibility determination that precludes summary judgment. See Hill v. City of Scranton, 411 F.3d 118, 131 (3d Cir. 1995). As such, as to Plaintiff's termination, there are genuine issues of material fact related to whether Plaintiff suffered an adverse employment action that preclude summary judgment on this issue.

Moreover, summary judgment is not warranted on Defendants' "shift change" argument because there are genuine issues of material fact related to whether the shift change constituted a change in her terms, conditions, and privileges of employment. See

Robinson, 120 F.3d at 1300. Because Plaintiff allegedly went from full time employment status to having the option of working two double shifts every weekend or being on-call for other shifts, a jury could conclude that the change constitutes a materially adverse employment action. (See Carian Dep., 55:17-22, Jackson Dep., 43:24, 44:1-5, 46:17-19.) Even a mere schedule change to weekend work can qualify as an adverse employment action. See Burlington Northern and Santa Fe Ry. Co. v. White, 548 U.S. 53, 71, 126 S.Ct. 2405 (2006) (finding a jury's determination of adverse employment action adequately supported); see also Mondzelewski v. Pathmark Stores, 162 F.3d 778, 787 (3d Cir. 1998). In Mondzelewski, the Third Circuit found that a change of shifts can be drastic enough to alter the "terms, conditions, or privileges" of employment. Id.  A reasonable jury could believe Defendants' testimony that Plaintiff was offered potential weekend work, and still find that Plaintiff suffered an adverse employment action. As a result there are genuine issues of material fact which preclude summary judgment on the issue of adverse employment action.

Finally, Defendants argue that Plaintiff's status in a protected class is not causally connected to the alleged adverse employment action.  Plaintiff may establish the causal connection through the use of direct and circumstantial evidence to raise a genuine issue of material fact. See Trujillo-Cummings, 173 F.3d at 866. Plaintiff also relies on the record as a whole to establish causation. See Kachmar, 109 F.3d at 177.  Given Plaintiff every favorable inference regarding her testimony concerning her termination meeting, the lack of an on-site translator during her shift, Palace's decision to replace her with nurses of Asian descent, the lack of documented complaints from patients, the Court finds that an inference of discrimination, while thin, is sufficiently established. Giving

Plaintiff the benefit of every doubt, there are  genuine issues of material fact as to what Plaintiff was told and whether discriminatory animus motivated Defendants' actions.

Plaintiff is not required at summary judgment to produce compelling evidence or conclusive proof that the adverse employment decision was motivated by discrimination. See Sempier, 45 F.3d at 729. She may survive summary judgment by simply pointing to her inclusion in a protected class and the relevant differences between her and her comparator. Id. In Sempier, a plaintiff in an age discrimination matter survived summary judgment on causation by showing the sufficient age difference between her and her replacement. Id.  Here, Plaintiff offers her testimony explaining the racial preference of the Defendants and the fact her replacements fit within the alleged preference. This creates a genuine issue of fact that precludes summary judgment.  Additionally, Plaintiff's pretext arguments, as discussed below,  are also sufficient to establish causation. See Zelinski, 108 Fed. App'x. at 707.

2.  Legitimate Business Reason and Pretext

As discussed under the analysis of direct discrimination, Defendants satisfy their burden of coming forth with a legitimate business reason for Plaintiff's alleged termination and shift change.  Plaintiff's shift change was allegedly an attempt to cure Plaintiff's perpetual tardiness and poor documentation skills. (Carian Dep., 55:17-22, Jackson Dep., 43:24, 44:1-5, 46:17-19.)  By providing this testimony, Defendants meet their burden of production and establish a legitimate business reason. See Burdine, 450 U.S. at 254. Plaintiff, therefore, must then show a genuine issue of material fact exists as whether Defendants' proffered reason is pretext.

To establish pretext, Plaintiff again relies on her own testimony that the Defendants told her that she was being terminated because of Defendants' preference for an Asian nurse and her eventual replacement by two Asian nurses. (Wesley Dep., 88:25-89:4.)  In addition, Plaintiff was never formally disciplined for her tardiness even though Defendants' Employee Discipline Policy requires written warnings prior to action. (See Discipline Policy, Pl. Ex. F; see also Carian Dep., Pl., Ex. E. 30:8-19; 21:5-22)  The only written warning that Plaintiff received was related to her failure to document the administration of narcotics to a patient. (See Pl. Ex. G and Ex. J, ¶¶ 4-5.)  In addition, Plaintiff received a "standard" grade for both her overall performance and for punctuality during the first three months of her employment. (Pl. Ex. K; Pl. Stat. of Mat. Facts, ¶¶ 38-40).  The lowest grade possible is "below standard." (Pl. Ex. K.)  Plaintiff bolsters her argument by pointing to other circumstantial factors, such as the lack of translators during her shift and the high population of Asian residents in her assigned location. (See Wesley Dep., 92:10-93:12, 66:9-19.)  Moreover, Defendants' allegation that Plaintiff was not terminated permits an inference that Plaintiff's performance was not as deficient as Defendants now claim.  This evidence is sufficient to demonstrate inconsistency, implausibility, and weakness in the Defendants' legitimate business reason pursuant to Fuentes. See Fuentes, 32 F.2d at 763.

Given that the standard on pretext is not high, a reasonable fact finder could find that this circumstantial evidence, combined with Plaintiff's testimony, contradicts Defendants' account and shows the true reason for the dismissal was impermissible discrimination. See Sempier, 45 F.3d at 729.  As a result, summary judgment is not warranted.

3.  <u>Affirmative Defense of Bona Fide Occupational Qualification</u>

Defendants argue that even if a fact finder believes Plaintiff's account, Defendants may not be liable because effective communication skills are reasonably necessary to the ordinary operation of Palace.  In limited circumstances, effective communication skills are a legitimate reason to discriminate.  <u>See</u> <u>Le v. City of Wilmington</u>, 736 F.Supp. 2d 842, 854 (D. Del. 2010) (citing <u>Yili Tseng v. Flordia A& M Univ.</u>, 380 Fed. App'x. 908, 908-910 (11th Cir. 2010)).  Where a plaintiff is unable, because of an accent or lack of proficiency in a specific language, to effectively communicate in a hospital setting, an employer may remove the employee on the basis of the employee's accent. <u>See</u> <u>Garcia v. Rush-Presbyterian-St. Luke's Med. Ctr.</u>, 660 F.2d 1217, 1222 (7th Cir. 1981) (Finding that the hospital did not discriminate when it determined that "some facility" in the English language is a bona fide occupational qualification.)   Thus, terminating an employee who speaks with an accent in favor of another candidate without an accent is not discrimination where effective communication skills are inextricably intertwined with job performance. <u>See</u> <u>Le</u>, 736 F.Supp. 2d at 854 (citing <u>Yili Tseng</u>, 380 Fed. App'x. at 908-910).

Defendants are not entitled to summary judgment on this argument.  The evidence in the record suggests that Plaintiff's shift was modified in order to correct tardiness; evidence that Plaintiff was removed from her shift because of her ineffective communication with the patients is disputed.  <u>See</u> Def. SOF, ¶ 46; Carian Dep., 39:22-24; 40:1-3; 43:16-18: 44:21-24; 45:1-4; Jackson Dep., 27:15-22; 29-28,; <u>see also</u> Def SOF, ¶ 70, Romero Decl., Exs F and H (stating that Plaintiff's repeated tardiness in December 2011 underscored the decision to remove her from her present shift).  The

record does not contain any written complaints about Plaintiff's use of the English language. See Garcia, 660 F.2d at 1222. Unlike the plaintiff in Le, there is no evidence in the instant case to indicate that Plaintiff's accent was impeding her job performance. See Le, 736 F.Supp. at 854.  In fact, Defendants claim that the real issue was not Plaintiff's accent, but her inattentiveness to the patients. Defendants have not produced proof of any complaints from patients that demonstrate that Plaintiff's accent was detrimental to their treatment.  As a result, the Defendants are not entitled to summary judgment on this theory.

## IV.   Conclusion

Defendants' Motion for Summary Judgment is granted in part and denied in part. A genuine issue of material fact exists as to whether Plaintiff was fired due to her national origin, or due to her race, ancestry, or ethnic characteristics. Summary judgment is granted as to Plaintiff's claims for national origin discrimination under 42 U.S.C. § 1981. Summary judgment is denied as to Plaintiff's claim of racial discrimination under  42 U.S.C. § 1981 and the NJLAD and national origin discrimination under the NJLAD.

An appropriate Order shall issue.

Dated: March 12, 2014.


 s/ Joseph H. Rodriguez_____
Hon. Joseph H. Rodriguez,
United States District Judge